**Bruce BOWERS, Plaintiff–Appellee,**

v.

**U.S. DEPARTMENT OF JUSTICE, Defendant–Appellant.**

No. 90–2063.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1991.

Decided April 11, 1991.

As Amended June 3, 1991.

---

John Peter Schnitker, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

James Hiram Lesar, Washington, D.C., argued (Bernard Fensterwald, III, Fensterwald & Alcorn, P.C., Vienna, Va., on brief), for plaintiff-appellee.

Before HALL and CHAPMAN, Circuit Judges, and COPENHAVER, United States District Judge for the Southern District of West Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

This is an appeal by the Department of Justice from an order of the district court directing the disclosure of the complete, unredacted FBI files on Ingrid Vanda Noreiko and Jacob Znatnajs. The order was the result of a suit by plaintiff Bruce Bowers under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Plaintiff is a journalist and is seeking the information in connection with news broadcasts and with a book he is writing. After an *in camera* review of the unredacted files and the written declarations submitted by the Department as to why the information was withheld, how it qualified for exemption from disclosure under 5 U.S.C. § 552(b), and why it should not be released, the district court found that neither Noreiko nor Znatnajs had held a position of trust or confidence with any government, had not been shown to have handled or observed any confidential information, and had not been involved in matters involving national security, and that there "was no reason in national security or otherwise for the withholding of the information about Noreiko and Znatnajs from disclosure under the Freedom of Information Act." We find that the district court erred in not applying the proper standards in its review of the records, in not giving any weight to the detailed explanations of the agency as to why the undisclosed information should be withheld, in not addressing and applying the exceptions found in 5 U.S.C. § 552(b), and in not finding facts to support its order releasing the files. The action of the district court is clearly erroneous, and we reverse.

I

In late 1984 and early 1985, plaintiff Bruce Bowers sought disclosure from the FBI and the CIA of all documents relating to Valentine Kamenev, Ingrid Noreiko and Jacob Znatnajs. Kamenev is a Soviet diplomat, who has served as press attache in the Soviet Embassy in Washington, as Dep-

uty Head of the Press Department of the Soviet Ministry of Foreign Affairs in Moscow, and as Consul General in the Soviet Consulate in San Francisco. Znatnajs was a Russian subject, born in Latvia, who had illegally entered the United States in 1946 and had died in New York City in 1985. Noreiko immigrated to the United States in 1974 from the Soviet Union, and she has become an American citizen. Noreiko may be related to Znatnajs.

Bowers first requested information about Kamenev in December 1984 from the FBI. This request was denied. Thereafter plaintiff submitted requests to the FBI for release of information concerning Znatnajs and Noreiko. Some information was released on Znatnajs and Noreiko, but other documents and information were withheld under exceptions to the Freedom of Information Act. After Bowers had exhausted his administrative remedies, he brought the present action and moved for an index as provided in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). *Vaughn* requires an agency in denying a request for documents under the Freedom of Information Act to furnish detailed justifications for exemption claims, itemize and index documents in such a manner as to correlate justifications for refusal to disclose where actual portions of documents are claimed to be exempt. *Id.* at 826–27. The government answered and denied the plaintiff's claims. The district court directed the government to prepare *Vaughn* indices. An 80 page declaration from FBI special agent John Mencer was filed concerning the Noreiko and Znatnajs files and redacted copies of 42 documents from the Znatnajs file were released. A seven page declaration from special agent Robert Peterson concerning the Kamenev file was filed. As to Noreiko, the agent indicated that the investigation was still open and claimed that exemption (7)(A)[1] applied to the withholding of documents pertaining to Noreiko.

---

1. 5 U.S.C. § 552(b) provides:
   This section does not apply to matters that are—.... (7) records or information compiled for law enforcement purposes, but only

to the extent that the production of such records or information (A) could reasonably be expected to interfere with enforcement proceedings....

Over the course of the litigation, a number of redacted copies of documents have been delivered to the plaintiff. After the government's motion for summary judgment was denied, the district court directed that unredacted copies of all of the documents and the justification for the government's withholding be submitted to the court for *in camera* inspection. This resulted in the government submitting for the *in camera* inspection of the court unredacted copies of the three files, including copies marked to show the portions withheld from the plaintiff by the FBI and CIA pursuant to Freedom of Information Act exemptions (1), (2), (3), (6), (7)(C), (7)(D), and (7)(E) and by the United States Marshal's Service pursuant to Freedom of Information exemption (7)(C). 5 U.S.C. § 552(b)(1), (2), (3), (6), (7)(C), (D), and (E). Also submitted were *in camera* declarations of Phillip W. Thomas and Robert F. Peterson and public declarations of Robert F. Peterson explaining the reasons for withholding the entire Kamenev file. The court was also furnished public declarations of special agent John Mencer and Robert F. Peterson explaining the reasons for withholding the materials from the Znatnajs file, and an *in camera* declaration of Phillip W. Thomas and public declarations of Robert F. Peterson, John Frederick Mencer and Lee E. Carle explaining the reasons for withholding the materials from the Noreiko file. Thereafter the government submitted the *in camera* declaration of Earl E. Pitts. These declarations exceeded 480 pages and explained in detail why § 552(b) exemptions applied to the information and documents withheld.

On March 7, 1990 the district court denied plaintiff's request for the production of the Kamenev file, but it directed that the complete FBI files [2] on Noreiko and Znatnajs be made available to the plaintiff on or before April 15, 1990. Following defendant's notice of appeal, we stayed the district court's order pending the outcome of this appeal.

We are no longer concerned with the Kamenev file because no appeal was taken from the district court's action in denying production of this file.

## II

■ The appellant claims error by the district court in ordering disclosure of the information relating to Znatnajs and Noreiko because (1) the court failed to accord "substantial weight" to the expert opinions submitted by way of declarations of agents of the FBI and the CIA, the executive branch agencies charged with determining what information the government may properly release, and (2) the court summarily ordered disclosure of information after the FBI and the CIA had determined such information to be properly withheld from the plaintiff under the FOIA exemptions (1), (2), (6), (7)(C), (7)(D) and (7)(E) and met their burden of demonstrating that the information was properly exempt from disclosure.

The standard of review in FOIA cases is limited to determining " 'whether (1) the district court had an adequate factual basis for the decision rendered and (2) whether upon this basis the decision reached is clearly erroneous.' " *Spannaus v. Department of Justice*, 813 F.2d 1285, 1288 (4th Cir.1987) (quoting *Willard v. Commissioner*, 776 F.2d 100, 104 (4th Cir.1985)). *Spannaus* makes clear that the words "clearly erroneous" as used in that opinion do not refer to the standard of review provided by Rule 52(a) of the Federal Rules of Civil Procedure, and that any findings of fact made on a summary judgment motion are not entitled to the clearly erroneous protection on review. Of course, legal errors are reviewed *de novo*. *Simmons v. Department of Justice*, 796 F.2d 709, 710 (4th Cir.1986).

## III

The FOIA was enacted as a general disclosure statute pertaining to all federal records, but Congress "realized that legit-

---

2. The CIA documents were contained within the FBI files and therefore are not separately addressed in this opinion, because the exemptions from disclosure are sufficient to cover the information whether contained in the files of the FBI or CIA.

imate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982), and as a result Congress provided the exemptions set forth in § 552(b).

█ In general, the FOIA exemptions are to be narrowly construed in favor of disclosure. *J.P. Stevens & Co. v. Perry*, 710 F.2d 136, 139 (4th Cir.1983). However, the act expressly recognizes that "public disclosure is not always in the public interest." *Baldrige v. Shapiro*, 455 U.S. 345, 352, 102 S.Ct. 1103, 1108, 71 L.Ed.2d 199 (1982).

The government is claiming that the information contained in the files is exempt from disclosure under one or more of exemptions (1), (2), (3), (6), (7)(C), (7)(D), and (7)(E) of § 552(b). Section 552(b) of the FOIA provides:

This section does not apply to matters that are—

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order;

(2) related solely to the internal personnel rules and practices of the agency;

(3) specifically exempted from disclosure by statute (other than Section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

. . . . .

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . ., (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. . . .

Pursuant to § 552(b)(1)(A) and (B), a lengthy Executive Order No. 12,356 was issued on April 6, 1982. This order prescribes a uniform system for classifying, declassifying and safeguarding national security information. This order

recognizes that it is essential that the public be informed concerning the activities of its Government, but that the interests of the United States and its citizens require that certain information concerning the national defense and foreign relations be protected against unauthorized disclosure. Information may not be classified under this Order unless its disclosure reasonably could be expected to cause damage to the national security.

Exec. Order No. 12,356, 47 Fed.Reg. 14,874 (1982).

The district court did not address the specific exemptions claimed by the Department of Justice, and it did not discuss or acknowledge the voluminous and very detailed justifications for withholding certain information as filed by the Department and set forth in its 480 pages of *in camera* and public declarations of agents Thomas, Pitts, Peterson, Mencer, and Carle. The district court's order does not mention the exemptions claimed nor the supporting declarations. The order is so concise and is couched in such general terms that we are

left with the impression that the district court reviewed the material through the eyes of a layman and without consideration of the declarations of the agents, who are charged with reviewing FBI and CIA information for classification purposes. This impression is increased because of the district court's opinion that the records "do not appear to contain anything remotely resembling anything connected with national security or other legitimate claim to an exemption from the Freedom of Information Act." The court found that neither Noreiko nor Znatnajs had held a position of trust or confidence with any government, and it was not shown that either had been in a position to handle or observe any confidential information. The court also found that most of the reports were "dull" and were repetitious summaries and recitals of items that had already been covered. The court concluded:

> Nevertheless, after several weeks of work over a long period of time in reviewing and re-reviewing these files, I find no reason in national security or otherwise for the withholding of the information about Noreiko and Znatnajs from disclosure under the Freedom of Information Act.

In connection with the Kamenev file, the court concluded:

> Release of this file is not being required because it is possible (theoretically) that, to one more technically expert than I, the file might conceivably reveal a morsel or two of out-of-date information on technology.

The presentation of the experts in the field of classifying and declassifying national security information was submitted to the court in the 480 pages of public and *in camera* declarations of the FBI and CIA agents, but the court does not discuss this evidence. Intelligence information may often be dull, repetitious and even tedious, but when it is considered with other bits and pieces of information, the total may present a picture that is detrimental to the national security of the United States. For this reason, the Congress, in enacting the exemptions in § 552(b), and the President, in issuing Executive Order 12,356, have sought to protect certain information from disclosure under the FOIA. The declarations filed by the above agents are under penalty of perjury, and set forth the agents' opinions, with the reasons therefor, as to why various documents identified in the declarations are exempt from disclosure under the FOIA. These declarations discuss the documents contained in the files of the FBI, the CIA and the Immigration and Naturalization Service on a page by page, line by line, and word by word basis and then provide the specific § 552(b) exemption under which nondisclosure is claimed and the reasons therefor. The agents making these declarations are highly trained in intelligence and national security matters, and they are designated by their agencies to review requests for documents and to prepare the declaration of exemptions from disclosure when necessary.

█ Phillip Thomas, who filed a declaration with the district court, is a special agent with the FBI and works in a supervisory capacity with the Classification Appeals and Affidavits Unit at FBI headquarters. He has responsibility for review of FBI information for classification purposes as mandated by Executive Order 12,356 and for the preparation of affidavits and declarations in support of claims of exemption under § 552(b)(1) of the FOIA. 5 U.S.C. § 552(b)(1).

Robert F. Peterson, John F. Mencer and Earl E. Pitts are also special agents of the FBI assigned to the Classification Appeals and Affidavits Unit at FBI headquarters with the same responsibilities and duties as agent Thomas in reviewing FBI information for classification purposes under Executive Order 12,356. Each of them reviewed materials requested by the plaintiff in the present case and filed lengthy declarations with the district court in which they set forth the specific disclosure exemption claimed and the reasons therefor for all of the documents withheld or the words deleted from documents.

Lee E. Carle is the information review officer of the Directorate of Operations

(DO) of the United States Central Intelligence Agency. He has held operational executive positions with the Directorate of Operations since 1956 and is presently responsible for reviewing documents containing information originated by the DO or otherwise implicating DO interest, which may be requested pursuant to the FOIA. Agent Carle reviewed nine CIA-originated documents and claimed the exemptions therefor under § 552(b)(1), (2), (3), and (6). He stated his reasons for nondisclosure or deletion of various words in the documents. He found that the undisclosed information satisfied the substantive and procedural classification requirements of Executive Order 12,356, that the information concerned intelligence activities of the CIA, and would reveal the identity of intelligence sources and/or disclose intelligence methods and could be expected to cause damage to national security. This agent's declaration, as did the others, justified the deletion of each word in a redacted document, and the withholding of other documents, by reference to a particular exemption under § 552(b).

The purpose of the exemptions to full disclosure under the FOIA is explained by the Court in *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), as follows:

Subsection (b) of the Act creates nine exemptions from compelled disclosure. These exemptions are explicitly made exclusive, 5 U.S.C. § 552(c), and are plainly intended to set up concrete, workable standards for determining whether particular material may be withheld or must be disclosed. Aggrieved citizens are given a speedy remedy in district courts, where "the court shall determine the matter de novo and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(3). Noncompliance with court orders may be punished by contempt. *Ibid.*

Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands. Sub-

section (b) is part of this scheme and represents the congressional determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses. As the Senate Committee explained, it was not "an easy task to balance the opposing interests, but it is not an impossible one either.... Success lies in providing a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." S. Rep. No. 813, p. 3.

*Id.* at 79–80, 93 S.Ct. at 832.

In the present case the government claimed that under § 552(b)(1), (2), (3), (6), (7)(C), and (D) certain information in the Znatnajs and Noreiko files was exempt, because it included national security matters, the identities of informants, informant information and personal information about third parties who were not subject to the plaintiff's request. Each position taken was supported in the declarations of the aforementioned agents of the FBI and the CIA.

In its order, the district court does not mention the specific exemptions claimed by the Department of Justice. The order makes no reference to the declarations filed by the agents of the FBI and the CIA. The district court seemed satisfied that Noreiko had held no "position of trust or confidence with any government" and that "she is not shown to have been in a position to handle or observe any confidential information" nor had she "ever been involved in matters involving national security nor any personal contacts with other people involved in national security matters."

As to Znatnajs, the court found "[t]he file appears to be a complete blank as to anything remotely connected with national security or any other security interest of the United States." The only mention of § 552(b) exemptions appears in the general statement that the Noreiko and Znatnajs files "do not appear to contain anything remotely resembling anything connected with national security or other legitimate claim to exemption from the Freedom of Information Act."

It is obvious from the district court's order that it reviewed the files and the materials submitted by the Department of Justice to support its claim to exemptions under an improper standard. The court was under a misapprehension that it was necessary for Noreiko and Znatnajs to be in a position of trust or confidence, or for them to have some information crucial to national security, or to be involved with national security, or to be involved with someone connected with national security. The law does not require that the subjects of a FOIA inquiry be involved with national security for the § 552(b) exemptions to apply. The inquiry of the district court must be directed at the information requested and the exemptions claimed. It is imperative that the court consider and accord "substantial weight to the expertise of the agencies charged with determining what information the government may properly release." *Simmons v. Department of Justice*, 796 F.2d 709, 711 (4th Cir.1986).

Exemption (b)(1) exempts matters which are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order." This exemption does not require, as a legal prerequisite for withholding, that the subject of the plaintiff's request be "in a position to handle or observe confidential information." The massive information submitted by the Department of Justice in the agent's declarations describe in detail the content of the materials withheld or deleted and demonstrate the bases for withholding under § 552(b). Some of the information was withheld under Executive Order 12,356, other withheld information involved practices of the FBI and the CIA, personnel files which would constitute a clearly unwarranted invasion of personal privacy, disclosure of the identity of confidential sources, and instances specifically exempted from disclosure by another statute.[3]

The plaintiff offered nothing to rebut the government's presentation.

What fact or bit of information may compromise national security is best left to the intelligence experts. If there is no reason to question the credibility of the experts and the plaintiff makes no showing in response to that of the government, a court should hesitate to substitute its judgment of the sensitivity of the information for that of the agency. As we stated in *Spannaus*, "[i]f the government fairly describes the content of the material withheld and adequately states its ground for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, a district court should uphold the government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency." *Spannaus v. Department of Justice*, 813 F.2d 1285, 1289 (1987), (quoting *Barney v. Commissioner*, 618 F.2d 1268, 1272 (8th Cir.1980)).

In the present case the Department gave, in its more than 480 pages of declarations, a very detailed and particularized account of why the withheld information qualified under the exemptions of § 552(b). This is substantially more than is required. As we stated in *Spannaus*.

> The Supreme Court has rejected the argument that the statute requires particularized showings of interference, holding instead that the Government may justify nondisclosure in a generic fashion. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 223–24, 236, 98 S.Ct. 2311, 2317–18, 2323, 57 L.Ed.2d 159 (1978).

*Spannaus*, 813 F.2d at 1288.

The unchallenged declarations presented by the Department of Justice to the district court demonstrate that disclosure of various parts of the material would reveal information provided to the FBI by a foreign government, and would identify the governmental entity in question which has expressly requested protection of its relationship with the FBI, would violate an under-

---

**3.** 50 U.S.C. § 403g exempts the CIA from revealing various classifications of information and is precisely the type statute covered by exemption (b)(3). *See Goland v. CIA*, 607 F.2d 339 (D.C. Cir.1978).

standing of confidentiality with the foreign government, would have a chilling effect on the free flow of information between the United States intelligence and law enforcement agencies and their foreign counterparts. Under Executive Order 12,356, § 1.3(c) prohibits "[u]nauthorized disclosure of foreign government information, the identity of a confidential foreign source, or intelligence sources or methods presumed to cause damage to the national security."

The declarations also explained that disclosure would reveal specific intelligence activities conducted by the FBI, including an ongoing intelligence and counter intelligence activity, and would identify a technique utilized by foreign intelligence services known to the FBI and describe the level of investigative activity by the FBI. The declarations also showed that information at issue described an intelligence system and its capability and disclosure would reveal and compromise a technical and mechanical device or procedure used for the collection of intelligence information, would allow a hostile entity to assess the general and specific intelligence capabilities of the Bureau during the time frame involved, would reveal information concerning confidential intelligence sources, including true names, code names and numerical designators. Much of the information provided to the FBI was done so with the express understanding that the identities of the informants would be given national security protection. The revealing of this information would compromise intelligence sources both present and future and would damage the national security of the United States.

The government's showing was made under oath and upon penalty of perjury by experienced agents of the FBI and the CIA trained in the fields of intelligence, counter intelligence and in the protection of intelligence information gathered. The government's showing clearly carried the burden placed upon it by § 552(a)(4)(B).

Applying the standard of review set forth in II above, we hold that the action of the district court in overruling the claims for exemption interposed by the government and in ordering the release of the unredacted files has no factual basis and is clearly erroneous. In reviewing the record, including the unredacted files and documents, and giving substantial weight to the detailed declarations of the FBI and CIA agents, and applying the clear language of the exemptions contained in § 552(b), we find that the withholding of the information by the defendant was legally and factually correct. Our review of the record also convinces us that a remand of this matter for further findings of fact would serve no useful purpose and would only delay the conclusion of this litigation. The plaintiff has been furnished with a "reasonably segregable portion of the record ... after deletion of the portions which are exempt under this subsection" as required by § 552(b), and this is all to which he is entitled on the present record.

REVERSED