**KEEPER OF THE MOUNTAINS FOUNDATION, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

Civil Action No. 2:06–0098.

United States District Court,
S.D. West Virginia,
at Charleston.

Aug. 28, 2007.

William V. Depaulo, William V. Depaulo, Esq., Charleston, WV, for Plaintiff.

Daniel Martin Riess, Marc A. Perez, U.S. Department of Justice, Washington, DC, Kelly R. Curry, U.S. Attorney's Office, Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

JOHN T. COPENHAVER, JR., District Judge.

Pending is a motion for summary judgment, filed by the defendant on January 10, 2007.[1]

### I.

On September 16, 2005, the Mississippi newspaper The *Clarion–Ledger* printed an article indicating that an internal email had been circulated from the U.S. Department of Justice ("DOJ") to various United States Attorneys' Offices. (Newspaper Article, attached as Ex. B to Compl.). The e-mail was sent sometime between September 13 and September 15, 2005, and posed the following question:

Has your district defended any cases on behalf of the (U.S.) Army Corps of Engineers against any claims brought by environmental groups seeking to block or otherwise impede the Corps work on the levees protecting New Orleans? If so, please describe the case and the outcome of the litigation.

(Compl.¶ 2). The newspaper article surmised that "[f]ederal officials appear to be seeking proof to blame the flood of New Orleans on environmental groups, documents show." (Newspaper Article, attached as Ex. B to Compl.).

Among the documents released in response to the Freedom of Information Act ("FOIA") request that is the subject of this litigation was an e-mail sent on September

---

1. Plaintiff's only exhibit attached to its response is duplicative of an exhibit attached by the defendant. Indeed, plaintiff acknowledges that it "accepts as substantially accurate, for purposes of this motion, the procedural chronology of the case offered in the Declarations of John F. Boseker and Melanie Ann Pustay submitted with the DOJ motion for summary judgment." (Resp. at 1).

13, 2005 from James Clingler of the DOJ Office of Legislative Affairs to various employees of the DOJ. The e-mail states as follows:

> I received a call this afternoon from Katherine English, a counsel at the Senate Environment and Public Works Committee. In connection with a series of Katrina-related oversight hearings that Chairman Inhofe is planning, Katherine asked us to provide the Committee with a list of any cases in which the Department has defended the Army Corps of Engineers against claims brought by environmental groups seeking to "block or otherwise impede" the Corps' work on the levees protecting New Orleans. The timing is urgent, according to Katherine. Let me know if you need any more informatino [sic] from me in order to process this request. Thanks.

(OIP Doc. Production at OLA 3, OLA 10, OLA 11, attached as Ex. 1 to Resp.). Plaintiffs concur with the theory expressed in *The Clarion Ledger* article that the DOJ was attempting to shift blame for the disaster that occurred in the aftermath of Hurricane Katrina onto environmentalists. (Compl.¶ 4).

On October 4, 2005, counsel on behalf of the plaintiff submitted the FOIA request to the DOJ. (Memo. in Supp. of M.S.J. at 2; 10–04–05 DePaulo Ltr. to DOJ, attached as Ex. A to Boseker Decl.). The request referenced the internal DOJ e-mail to all U.S. Attorneys' Offices and sought information based on the following seven items:

(1) Copies of all emails in substantially the form [as the e-mail referenced in the newspaper article] . . . that were in fact sent to any person;

(2) Copies of all replies to the referenced emails;

(3) Copies of all documents pertaining to the September 16, 2005 article in *The Clarion Ledger;*

(4) Copies of all documents addressed to, prepared by, or copied to Cynthia Magnuson of the Department of Justice pertaining to the referenced email or the September 16, 2005 article in *The Clarion Ledger;*

(5) Copies of any documents pertaining to any inquiry into the source of the leak of the referenced email to *The Clarion Ledger;*

(6) Copies of any documents recording a communication from the United States Congress or any other source outside the Department of Justice pertaining to the referenced email or requesting that the inquiry incorporated into the email be sent; [and]

(7) Copies of any documents in any other way pertaining to the referenced email or the September 16, 2005 article in *The Clarion Ledger.*

(*Id.*). The DOJ referred the FOIA request to its two offices most likely to have the relevant information: the Executive Office of the U.S. Attorneys ("EOUSA") and the Office of Information and Privacy ("OIP"). (Memo. in Supp. of M.S.J. at 1). Each filed a *Vaughn* Index.[2]

## A. EOUSA's Vaughn Index

On February 8, 2006, the EOUSA provided plaintiff with approximately 175 pages of documents without excision. (Bo-

---

**2.** A *Vaughn* index, the name of which is derived from the case of *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), is a list "which describes each document withheld by an agency with sufficiently detailed information to en-

able a district court to rule whether it falls within an exemption provided by FOIA." *Ethyl Corp. v. EPA,* 25 F.3d 1241, 1244, n. 1 (4th Cir.1994).

seker Decl. ¶ 8, attached as Ex. 1 to Mot. for S.J.). On June 26, 2006, in accordance with Magistrate Judge Mary E. Stanley's order of June 14, 2006, the DOJ filed the EOUSA *Vaughn* index describing six documents consisting of ten pages that were withheld in full and excluded from the February 8, 2006, production by the EOU-SA. (06–26–06 *Vaughn* Index). Upon further evaluation of these six documents, the EOUSA released two one-page e-mails (listed as documents 2 and 6 in the *Vaughn* index) in largely unredacted form [3] to the plaintiff. (Boseker Decl. ¶ 28, attached as Ex. 1 to Mot. for S.J.; Memo. in Supp. of M.S.J. at 5). The following withheld items described in the EOUSA's *Vaughn* index remain in controversy: a two-page tally of the various U.S. Attorneys' Offices entitled "Alternative Dispute Resolution Survey of EOUSA Cases" (document 1), one redacted conclusional sentence from an otherwise disclosed one-page e-mail from October 17, 2005 (part of document 2), a three-page e-mail exchange from September 15, 2005 (document 3), a two page e-mail exchange from October 14, 2005 (document 4), and a one page e-mail exchange from September 14, 2005 (document 5). (*Id.;* 06–26–06 *Vaughn* Index).

According to a sworn declaration from the DOJ,

> [Document 1, the] "Alternative Dispute [sic] Survey of EOUSA Cases," [is a] printed form (2 pages), appearing to have been employed by EOUSA personnel to tally and record by hand the numerous responses to USAO searches for records responsive to inquiry regarding levees and environmental injunction. Contains names of USAOs, contacts responding, and whether or not anything was located as result of search therein. (All recorded responses on this document are "No.").

(Boseker Decl. ¶ 28 at Doc. 1, attached as Ex. 1 to Mot. for S.J.). The EOUSA's *Vaughn* index indicates that the undated, unsigned, and preprinted tally contains notes compiled by the EOUSA staff. (06–26–06 *Vaughn* index).

With respect to the e-mails, the EOU-SA's *Vaughn* index lists the date the item was originally sent, the sender by name and recipients by name, the number of pages of the e-mail exchange, and the text in the subject line. (*Id.*). The index then explains the general subject matter of the message. (*Id.*). For example, one of the descriptions states this much about the contents of the message:

> This e-mail contains internal Department of Justice communications between EOUSA and other DOJ components regarding the Katrina-related survey, and it contains intra-agency deliberations regarding possible courses of action in response to a forwarded press inquiry concerning the Katrina-related survey at issue.

(*Id.*). The other e-mail descriptions in the EOUSA's Vaughn index are similar to this example inasmuch as they describe e-mail conversations in which "possible courses of action" were discussed in the context of either a response to the press inquiry about the survey immediately prior to publication of the article (document 3) or a response to the congressional inquiry relating to the newspaper article (documents 4 and 5).(*Id.*). For each e-mail exchange,

---

**3.** In document 2, one sentence containing a recommendation and soliciting a response was redacted pursuant to FOIA exemption 5 along with a personal phone number which was redacted pursuant to exemption 2. (Boseker Decl. ¶ 28 at Doc. 2, attached as Ex. 1 to Mot. for S.J.). Plaintiff's response implies it is not contesting the redaction of personal phone numbers and indeed may not even be contesting the sentence containing the recommendation. (Resp. at 2, 11). In exercising caution, the court will still consider the redacted sentence containing the recommendation to be in controversy.

the index clarifies which exemption is being invoked and why and explains whether the document was fully or partially withheld. (*Id.*).

The defendant claims the two-page survey is exempt from disclosure under 5 U.S.C. § 552(b)(2) ("exemption 2" relating to internal practices of an agency), and the e-mail exchanges are properly excluded under 5 U.S.C. § 552(b)(5) ("exemption 5" relating to inter or intra-agency memos not available by law to a nonagency party).[4](*Id.*).

## B. OIP's *Vaughn* Index

On August 28, 2006, OIP provided counsel for plaintiff with eighteen pages of documents.[5] (OIP Doc. Production, attached as Ex. 1 to Resp. to M.S.J.). Two of those pages consisted of a letter from Congressman John Conyers, Jr. to Attorney General Alberto Gonzales and were unredacted. (*Id.*; 09–16–05 Congressman Conyers letter to Attorney General Gonzales, attached as Ex. A to Resp.). The remaining sixteen pages consisted of several e-mails per page, many of which were redacted in full. (OIP Doc. Production, attached as Ex. 1 to Resp. to M.S.J.).

In its document production, the OIP, unlike the EOUSA, coded each individual message in the sixteen pages of e-mails as follows: PAO 1 through PAO 26 and OLA 1 through OLA 30.[6] (*Id.*). PAO 1, 3, 14, 15, 18, 21, 22, 23, 25, 26, and OLA 1, 3, 4, 5, 6, 10, 11, 18, and 27 were all disclosed in full in the production on August 28, 2006.(*Id.*).

OLA 2 was referred to the Civil Division of the DOJ,[7] OLA 12 was referred to the Environmental and Natural Resources Division ("ENRD") of the DOJ, and PAO 16/19, 17/20,[8] and 24 were referred to the EOUSA before all of these referred e-mails were later disclosed in full to the

---

4. The EOUSA's *Vaughn* index includes § 552(b)(2) in addition to § 552(b)(5) as a permissible exemption for withholding the e-mails. (06–26–06 *Vaughn* index). As to the e-mails, however, the agency employee's subsequent declaration declined to assert the § 552(b)(2) exemption, and counsel for the DOJ likewise does not argue that § 552(b)(2) is applicable in that context. (Boseker Decl. ¶ 23, attached as Ex. 1 to Mot. for S.J.; Memo. in Supp. of M.S.J. at 10). Thus, the court need not consider the 552(b)(2) exemption with respect to the e-mails.

5. A two-page document referred by the EOUSA to the OIP was apparently duplicative of another document that had already been disclosed. (Pustay Decl. ¶ 6; 08–28–06 Pustay Ltr. to DePaulo, attached as Ex. 2–C to Resp.). Another nine documents consisting of ten pages referred to the OIP by the EOUSA were unresponsive to plaintiff's request. (*Id.*). The nine unresponsive documents are sufficiently described in the declaration accompanying the EOUSA's *Vaughn* index and in the defendant's memorandum. (Pustay Decl. at 4, n. 2, attached as Ex. 2 to Mot. for S.J.; Memo. in Supp. of M.S.J. at 4, n. 1). In its response, plaintiff did not object to their omission from the Vaughn index or their failure to be disclosed.

6. "PAO" is an acronym for the Office of Public Affairs of the DOJ, and "OLA" is an abbreviation for the Office of Legislative Affairs of the DOJ. (09–01–06 *Vaughn* Index, attached as Ex. 2–B to Mot. for S.J. at 4). The OIP conducted records searches for both the PAO and OLA. (Pustay Decl. ¶ 5, attached as Ex. 2–A to Mot. for S.J.).

7. Based on its response, it appears plaintiff may not have been able to read the barely legible notations on OIP's redacted portions of its document production, which explained how some of the documents were duplicative of others such that separate entries in the OIP *Vaughn* index were unnecessary. The court notes that it would have been preferable for OIP to explain the status of each document in the *Vaughn* index in addition to the notes in the margins in the document production.

8. PAO 16 and 19 are the same version of an individual email message as are PAO 17 and 20. (OIP Doc. Production, attached as Ex. 1 to Resp.).

plaintiff. (09–01–06 *Vaughn* index, attached as Ex. 2–B to Mot. for S.J.; Putsay Decl. ¶ 5, attached as Ex. 2–A to Mot. for S.J.; 09–01–06 Jt. Status Rpt. at 2; Boseker Decl. ¶¶ 15–16, attached as Ex. 2 to Mot. for S.J.; Memo. in Supp. of M.S.J. at 3–4).

OIP justified the redactions of PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21 by indicating in its document production that these e-mails were "processed by EOU-SA." (*Id.;* 08–28–06 Pustay Ltr. to DePaulo, attached as Ex. 2–C to Mot. for S.J.). It is unclear what is meant by the term "processed." (*Id.*). Presumably, these e-mails were described in the EOU-SA's Vaughn index, although OIP does not say so explicitly. Both the OIP's Vaughn index and the Pustay declaration fail to clearly articulate why these e-mails may be redacted and excluded from the OIP's Vaughn index.

None of the e-mails in the sixteen pages provided by OIP were designated PAO 4 or OLA 17, 22, 23, 24, 25, or 26. The e-mail messages skip from PAO 3 to PAO 5, from OLA 16 to OLA 18, and then again from OLA 21 to OLA 27, and in each case, the page ends with the former number and the next page begins with the latter number. Unlike when the document production skips over OLA 7 and 8, however, there is no entry in the OIP's *Vaughn* index for any documents designated PAO 4 or OLA 17, 22, 23, 24, 25 or 26 as there is for OLA 7 and 8. Nowhere in the record does plaintiff explain why the designations for each e-mail would not be in strict numerical order. The court is unaware whether these documents exist.

On September 1, 2006, OIP sent plaintiff a *Vaughn* index relating to the production on August 28, 2006. (Memo. in Supp. of M.S.J. at 4). PAO 2 was disclosed, but for a redacted personal cell phone number excluded pursuant to exemption 6, and plaintiff does not object to its redaction.

(Resp. at 2). Because the redaction in this e-mail message involved only the cell phone number and is uncontested, the number of OIP e-mail messages listed in the *Vaughn* index that are at issue is six rather than seven. The index lists six of the released but redacted e-mail messages, identified as PAO 6, 7, 8, 10, 13 and OLA 13, as well as two unsigned draft letters from an Assistant Attorney General to Congressman Conyers, withheld in full and identified as OLA 7 and 8. (09–01–06 OIP *Vaughn* index, attached as Ex. 2–B to Mot. for S.J.). OLA 16, 19, 20, 28, 29, and 30 are duplicative of the e-mails listed in the *Vaughn* index. (08–28–06 OIP Doc. Production, attached as Ex. 1 to Resp.).

All of the contested documents listed in the OIP's index, the redacted portions of the six e-mail messages designated as PAO 6, 7, 8, 10, 13 and OLA 13 and the two withheld draft letters identified as OLA 7 and 8, are alleged to be exempt under § 552(b)(5) only. (*Id.*).

The OIP's Vaughn index describes the six withheld e-mails much like the EOU-SA's Vaughn index. (09–01–06 Vaughn index, attached as Ex. 2–B to Mot. for S.J.). The OIP's version lists the date and explains the general content of the message. (*Id.*). The OIP identifies the department of the sender and recipients. (*Id.*). In the briefing, the DOJ uses the example of the document identified as PAO 13 to describe the sufficiency of the index with respect to the e-mails. (Reply at 10–11). The index describes the contents of the message as follows:

> E-mail message from PAO to ENRD personnel regarding a press inquiry relating to Hurricane Katrina. The author advises of the press inquiry and solicits background information on the topic as well as input on a contemplated manner of response to the inquiry.

(09–01–06 *Vaughn* index, attached as Ex. 2–B to Mot. for S.J.). All of the e-mail descriptions in the OIP's *Vaughn* index are similar to PAO 13.(*Id.*). They all describe e-mail conversations in which a possible response to the newspaper inquiry were discussed. (*Id.*). The legend at the end of the index clarifies any abbreviations used. (*Id.*). Again like the EOUSA, the OIP's index explains which exemption is being invoked and whether the document was fully or partially withheld. (*Id.*).

On February 9, 2006, plaintiff brought suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for defendant's refusal to disclose a portion of the records requested. This case is properly before the court as it has subject matter jurisdiction to hear "civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331.

Defendant argues summary judgment is appropriate because all of the information withheld was properly so withheld pursuant to the enumerated FOIA exemptions in 5 U.S.C. § 552(b). Plaintiff disputes the adequacy of the *Vaughn* indices and the applicability of the exemptions.

## II.

### The Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing—"that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed.R.Civ.P. 56(c); *Id.* at 322–23, 106 S.Ct. 2548. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir.1991).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir.1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir.1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). Inferences that are "drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United*

*States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## III.

### A. FOIA

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). FOIA thus begins with the proposition that agencies shall make information available to the public. 5 U.S.C. § 552(a)(3)(A); *Hanson v. U.S. Agency for Int'l Dev.,* 372 F.3d 286, 290 (4th Cir.2004).

 "While an efficient and effective democratic government is one that is open to the people and accountable to them, the people's access must be orderly and not so unconstrained as to disrupt the government's daily business." *Ethyl Corp. v. EPA,* 25 F.3d 1241, 1245 (4th Cir.1994). Consequently, there are nine discrete exemptions, which allow an agency to withhold certain categories of information sought by a request from the general public. 5 U.S.C. § 552(b); *Hanson,* 372 F.3d at 290. "In general, FOIA exemptions should be narrowly construed to favor disclosure." *Hanson,* 372 F.3d at 290 (citing *Bowers v. U.S. Dep't of Justice,* 930 F.2d 350, 354 (4th Cir.1991)); *see also Ethyl Corp.,* 25 F.3d at 1245; *Virginia Beach v. U.S. Dep't of Commerce,* 995 F.2d 1247, 1252 (4th Cir.1993). In a judicial review of the agency's response, the agency has the burden of justifying nondisclosure, and the court reviews the agency's action *de novo. Id.*; 5 U.S.C. § 552(a)(4)(B). The government satisfies this burden "by describing the withheld materials with reasonable specificity and explaining how it falls under one of the enumerated exceptions. As a general rule, these and all other FOIA determinations should be resolved on summary judgment." *Hanson,* 372 F.3d at 290 (internal citation omitted).

The relevant FOIA exemptions provide as follows:

(b) This section does not apply to matters that are—

. . .

(2) related solely to the internal personnel rules and practices of an agency;

. . .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

. . .

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted shall be indicated at the place in the record where such deletion is made.

5 U.S.C. § 552(b).

### B. Analysis

#### 1. Inadequacy of OIP's *Vaughn* Index

As described previously, curiously absent from both OIP's document production, OIP's *Vaughn* index, and the accompanying Pustay declaration, are any mention of PAO 4 and OLA 17, 22, 23, 24, 25 and 26. (09–01–06 *Vaughn* index, attached as Ex. 2–B to Mot. for S.J.; OIP Doc. Production, attached as Ex. 1 to Resp.). To the extent the documents

exist and are not described in the *Vaughn* index and are otherwise without further explanation, the court has no basis to consider whether they were properly withheld.

■ Furthermore, it is unclear the reasons for redacting and omitting from the *Vaughn* index the e-mails designated PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21, which are identified in the OIP's document production as being "processed by the EOUSA." (08–28–06 OIP Doc. Production, attached as Ex. 1 to Resp.).

■ The index must "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C.Cir.1987). The court must "be able to derive from the [*Vaughn*] index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir.1994). No such explanation is presented that would afford a meaningful opportunity for review of PAO 4 and OLA 17, 22, 23, 24, 25 and 26, if such documents do exist, or of the e-mails processed by the EOUSA, identified as PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21. The OIP's *Vaughn* index and accompanying Pustay declaration are clearly inadequate in this regard.

The DOJ replies to the plaintiff's charge that the OIP's index is unclear by stating that the plaintiff misunderstands the DOJ's system because it numbers each individual message within an e-mail chain. (Reply at 10). The DOJ reply does not elaborate further. (*Id.*). This reply does not explain the absence of the numerical designations of PAO 4 and OLA 17, 22, 23, 24, 25 and 26 from both the documents produced and the OIP's *Vaughn* index or what is meant when the OIP merely states that PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21 were "processed by EOUSA."

The defendant must be afforded an additional opportunity to explain itself, and if necessary, produce PAO 4 and OLA 17, 22, 23, 24, 25 and 26 and PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21 or to provide a supplemental *Vaughn* index explaining the basis for withholding these e-mails. In *Dellums v. Powell*, 642 F.2d 1351, 1359 (D.C.Cir.1980), the D.C. Court of Appeals agreed with the district court that the *Vaughn* index was deficient but found the "District Court should have afforded Mr. Nixon one more opportunity to submit a satisfactory index, rather than to ignore his objections and order the immediate release of all of the transcripts to appellee's counsel." *See also Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969, 979–980 (3d Cir.1981) (citing *Dellums*, 642 F.2d at 1359). The circuit court found the immediate disclosure of documents to be reversible error in *Dellums*. Similarly, in *Campaign For Responsible Transplantation v. U.S. Food & Drug Admin.*, 219 F.Supp.2d 106, 111–112, 116–117 (D.D.C. 2002), the district court confronted a deficient and inadequate *Vaughn* index and ordered the FDA to confer with the plaintiff to resolve any remaining disputes and then, if necessary, to provide a supplemental *Vaughn* index remedying any deficiencies in the original index.

Plaintiff relies on *Knight v. CIA*, 872 F.2d 660, 662 (5th Cir.1989) and *Maine v. Dep't of Interior*, 298 F.3d 60, 72–73 (1st Cir.2002) for support that documents not adequately explained in the *Vaughn* index should be released or reviewed in *camera*, but neither compels such a result here. (Resp. at 14). The circuit court in *Knight* merely mentions the district court's in *camera* review of withheld CIA documents without criticism. *Knight*, 872 F.2d at 662. In *Maine*, the circuit court acknowledged that the immediate disclosure of documents based on an agency's flawed submissions was "frowned upon" in *Coastal*

*States,* but it found the district court did not abuse its discretion in ordering the immediate disclosure of some documents based on an inadequate *Vaughn* index, instead of providing the agency with an opportunity to revise the index. *Maine,* 298 F.3d at 72–73.

Though the OIP's *Vaughn* index is unclear, the court finds it premature, at this time and without a motion from the plaintiff, to compel the defendant to produce PAO 4 and OLA 17, 22, 23, 24, 25 and 26 and PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21 for an in *camera* review or to order their immediate release. *See Quinon v. FBI,* 86 F.3d 1222, 1227–28 (D.C.Cir.1996) (district court has broad discretion in determining when in *camera* review should be conducted). At this juncture, the court does not even know whether the first set of such documents exist. The second grouping of documents—those processed by the EOUSA—may be permissibly withheld under the explanations in the EOUSA's Vaughn index.

Instead, the court adopts the approach undertaken in *Campaign For Responsible Transplantation* and urges the parties to confer on PAO 4 and OLA 17, 22, 23, 24, 25 and 26 and PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21. To the extent they do not agree on whether these e-mails need to be redacted, the court can only evaluate the appropriateness of the redactions based on a supplemental *Vaughn* index which provides a basis for their exclusion. Leaving this issue aside for now, the court proceeds to the discussion of those documents that were described in the *Vaughn* indices.

Essentially, the *Vaughn* indices list three types of documents withheld by the defendant. (06–26–06 *Vaughn* Index; 09–01–06 *Vaughn* Index, attached as Ex. 2–B to Mot. for S.J.). They include a tally of the U.S. Attorneys' offices who responded to the post-Katrina e-mail, draft letters to Congressman Conyers, and various e-

mails. (*Id.*). Defendant asserts § 552(b)(2) or "exemption 2" for withholding the tally and § 552(b)(5) or "exemption 5" for withholding everything else in issue, consisting of the draft letters and e-mails. (*Id.*).

## 2. Applicability of Exemption 2 to Tally of U.S. Attorneys

■■ Exemption 2 protects from disclosure "matters that are ... related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). As a threshold matter, the information must be "used for predominantly internal purposes." *Schiller v. NLRB,* 964 F.2d 1205, 1207 (D.C.Cir.1992) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1073 (D.C.Cir.1981) (en banc)). A tally of U.S. Attorneys' Offices in response to a DOJ inquiry is most assuredly used predominantly for internal purposes, and plaintiff does not argue otherwise.

■ Following clearance of this initial "used for predominantly internal purposes" hurdle, exemption 2 has been found to exempt two subcategories of information: (1) information the release of which would risk circumvention of agency regulations and (2) "routine matters of merely internal interest." *Schiller,* 964 F.2d at 1207 (citing *Schwaner v. Dep't of Air Force,* 898 F.2d 793, 794 (D.C.Cir.1990)); *see also Founding Church of Scientology v. Smith,* 721 F.2d 828, 831, n. 4 (D.C.Cir. 1983). The first subcategory of the exemption is known in the D.C. Circuit as "high 2," while the second is known as "low 2." *See e.g. Schiller,* 964 F.2d at 1207; *Wiesenfelder v. Riley,* 959 F.Supp. 532, 535 (D.D.C.1997). The DOJ claims this two-page document is exempt under the "low 2" conception of the exemption relating to routine matters of internal interest. (Resp. at 7).

The case in our circuit to deal with the routine matters of internal interest portion of exemption 2 is *Nix v. U.S.*, 572 F.2d 998, 1005 (4th Cir.1978). In Nix, it was explained that "[m]erely how the FBI routes and labels its investigations, to whom its agents send reports of the investigations, and who does the typing of the reports are ordinarily not of such genuine and significant public interest as to require FOIA disclosure by subsection (2)." 572 F.2d at 1005 (citing *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir.1977)). Other courts have likewise found application of the exemption appropriate where plaintiffs sought information about trivial matters. *See e.g. Schiller*, 964 F.2d at 1208 (internal time deadlines and procedures, record-keeping directions, instructions on contacting agency officials for assistance, and guidelines on agency decisionmaking were properly excluded from disclosure); *Hale v. U.S. Dep't of Justice*, 973 F.2d 894, 896–897, 902 (10th Cir.1992), *vacated by Hale v. U.S. Dep't of Justice*, 509 U.S. 918, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993) ("a checklist form used to assist [FBI] special agents in consensual monitoring; [and] personnel directories containing the names and addresses of FBI employees" were, after in *camera* review, considered trivial and were excluded from disclosure under both exemptions 2 and 7 when state death row inmate sought information relating to the simultaneous federal investigation into the kidnap and murder for which he was convicted in state court). The D.C. Circuit has explained that, "if the material relates to trivial administrative matters of no genuine public interest, exemption would be automatic under the statute." *Smith*, 721 F.2d at 830, n. 4 (internal citation omitted).

The DOJ does not argue that the request for the tally is or would be overly burdensome. In fact, the two-page document has already been located and reviewed. (Boseker Decl. at ¶ 28, attached as Ex. 1 to Mot. for S.J.). Instead, the DOJ rightly focuses on the triviality of the tally at issue. (Reply at 3). The DOJ contends that,

> The undated, unsigned draft handwritten tally of USAO responses to the e-mail discussing claims brought by environmental groups falls within the terms of Exemption 2 because it reflects the internal practice of DOJ's informal tracking of responses from various USAO's. Additionally, the handwritten tally represents precisely the sort of trivial administrative material that courts have determined to lack any genuine public interest.

(*Id.*). Plaintiff responds by posing the following question:

> "What more dramatic and definitive rebuttal to the Senator's patent hostility to environmentalists could exist than a hand-written tally of U.S. Attorneys' offices demonstrating in a graphic fashion [what] no public relations team could hope to produce the fact that the evidence in support of the Senator's hypothesis [that the malfunction of the levees could be connected to environmentalists] was absolutely nothing [?]"

(Resp. at 3).

The purpose of exemption 2 is "simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." *Department of the Air Force v. Rose*, 425 U.S. 352, 369–70, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). In *Nix, Schiller, Hale*, and *Maroscia*, the information sought was about mundane internal procedural matters, primarily involving record-keeping, which may have had implications for their particular cases, but which did not contain any important public information. It goes without saying that the general public cares little about the way agen-

cies label investigations or maintain their personnel directories.

█ In contrast to those cases, the tally is substantive evidence of the DOJ's role in assisting Senator Inhofe's research into environmentalists' involvement, if any, in Corps projects relating to New Orleans levees. The DOJ's role in assisting a Senator in assigning blame for a putative government failure on a political constituency is important public information. So, too, are the results reflected in the tally. The tally is, thus, far from trivial. To conclude that the exemption covers the document at issue would, in this instance, allow the exception to eviscerate the general rule of disclosure set forth in FOIA.

█ The fact that the DOJ's declaration already disclosed that all of the U.S. Attorneys' Offices answered the question about the involvement of environmentalists negatively does not permit the DOJ to withhold it. (Boseker Decl. ¶ 28, attached as Ex. 1 to Mot. for S.J.). For one, the description of the document may be incomplete. The *Vaughn* index indicates that the EOUSA made notes on the tally, but there is no description in the declaration of any notes. (*Id.*; 06–26–06 *Vaughn* index). More importantly, disclosure of contents of the document does not make the document itself trivial. When an exception is applicable, FOIA allows for the agency to describe the document in a *Vaughn* index and withhold it so that the court can discern whether it was permissibly withheld. The overarching purpose and general rule of FOIA is to provide for disclosure of documents, not to describe and withhold.

Consequently, the court finds the defendant's assertion of the exemption misplaced. The tally has significant public value and is "not related solely to the internal personnel rules and practices of the agency." *See* 5 U.S.C. § 552(b)(2).

### 3. Applicability of Exemption 5 to Various E-mails and DOJ Drafts of Letter to Congressman Conyers

The remainder of the documents described in the *Vaughn* indices are being withheld pursuant to exemption 5.

Exemption 5 provides that FOIA disclosure rules do not apply to "interagency or intraagency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have interpreted Exemption 5 to exclude from disclosure documents produced under the attorney work product doctrine and the deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149–50, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

*Hanson*, 372 F.3d at 290–291. Defendant asserts the deliberative process privilege for withholding the draft letters to Congressman Conyers, the three fully withheld and one partially redacted EOUSA e-mail exchanges, and the six OIP e-mail messages. (Resp. at 2).

█ The purpose of the deliberative process privilege is to encourage frank discussion of issues within the government by insulating government employees from the chilling effect likely to occur were the process to be opened up to public scrutiny and to protect against public confusion resulting from disclosure of reasons and rationales that were not ultimately the bases for the agency's action. *Sears, Roebuck & Co.*, 421 U.S. at 150, 95 S.Ct. 1504; *Dep't of Interior v. Klamath Water Users Protective Ass'n.*, 532 U.S. 1, 8–9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001); *Ethyl Corp.*, 25 F.3d at 1248 (internal citations omitted); *Virginia Beach*, 995 F.2d at 1252–1253 (internal citations omitted). The logic behind the privilege is that this open dialogue without fear of reprisal will enhance the quality of the government's decision-

making, unlike the restrained discussion that would often result if conducted "in a fishbowl." *EPA v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) (citing S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)); *Klamath Water Users*, 532 U.S. at 8–9, 121 S.Ct. 1060; *Ethyl Corp.*, 25 F.3d at 1250 (internal citations omitted).

■ In order for the deliberative process privilege to apply, the government must satisfy a two-prong test. *Virginia Beach*, 995 F.2d at 1253. The government must establish that the withheld material was both predecisional and deliberative. *Id.*

■ "Predecisional documents are 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Id.* (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975)). To satisfy the "predecisional" criterion, the government need not

> identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process ... [T]he line between predecisional documents and postdecisional documents may not always be a bright one.

*Virginia Beach*, 995 F.2d at 1253 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–52, nn. 18–19, 95 S.Ct. 1504, 1516–17, nn. 18–19, 44 L.Ed.2d 29 (1975); accord *Access Reports*, 926 F.2d at 1196 (reject-

ing requirement that government " 'pinpoint' a single decision to which the [withheld] memorandum contributed")).

■ The deliberative prong requires that the information be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 1143–44 (D.C.Cir.1975). "Deliberative material reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Virginia Beach*, 995 F.2d at 1253.

> To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment. The deliberative process privilege, we underscore, is essentially concerned with protecting the process by which policy is formulated.... [W]hen material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable.

*Ethyl Corp.*, 25 F.3d at 1248–49.

### a. E-mails

The *Vaughn* indices and corresponding attached declarations [9] identify three fully withheld and one partially redacted e-mail exchanges withheld by the EOUSA and six e-mail messages fully redacted by the OIP. These four EOUSA exchanges and six OIP messages as described in the *Vaughn* indices and declarations apparently relate to agency employees' discussions about possible courses of action in response to the

9. There was a listing in the EOUSA's *Vaughn* index for the entirety of document 2. (06–26–06 *Vaughn* index). When it was later determined that document 2 should be disclosed but for a redacted phone number and a redacted sentence, the Boseker declaration explained the reason for redacting. (Boseker Decl. ¶ 28 at Doc. 2, attached as Ex. 1 to Mot. for S.J.). The court thus considers the Boseker declaration in conjunction with the EOUSA's *Vaughn* index in evaluating whether the sentence in document 2 was permissibly withheld.

inquiry from the Senate committee and in response to *The Clarion Ledger* newspaper story. (06–26–06) *Vaughn* Index; 09–01–06 *Vaughn* Index, attached as Ex. 2–B to Mot. for S.J.; Pustay Decl. ¶¶ 11–12. For example, the following description in the EOUSA's *Vaughn* index for withholding document 3 was typical of the defendant's bases for withholding all of the e-mails:

> This e-mail contains internal Department of Justice communications between EOUSA and other DOJ components regarding the Katrina-related survey, and it contains intra-agency deliberations regarding possible courses of action in response to a forwarded press inquiry concerning the Katrina-related survey at issue.

(06–26–06 *Vaughn* index for doc. 3).

▮ The four EOUSA exchanges and six OIP messages were prepared by agency personnel in an effort to recommend the policy judgments that should be formulated in determining the appropriate responses to the Senate committee and newspaper story. (*Id.;* Boseker Decl. ¶ 28, attached as Ex. 1 to Mot. for S.J.). In that sense, they satisfy the "predecisional" prong of the deliberative process privilege. *See Virginia Beach*, 995 F.2d at 1253; *Ethyl Corp.*, 25 F.3d at 1248. The four EOUSA exchanges and six OIP messages presumably reflected the personal opinions of the writer, rather than the official policy of the agency, and that is precisely what the deliberative process privilege was meant to protect from disclosure. *See id.*

With respect to the deliberative prong of the privilege, it appears the four EOUSA exchanges and six OIP messages were part of the give-and-take of the consultative process leading to the policy-oriented judgment of the agency of how to respond to the Senate inquiry and article. (06–26–06 *Vaughn* Index; 09–01–06 *Vaughn* Index; Boseker Decl.; Pustay Decl.). Con-sequently, the deliberative prong has been satisfied by the government. *See Virginia Beach*, 995 F.2d at 1253.

▮ Even for the four EOUSA exchanges and six OIP messages, plaintiff contends the *Vaughn* indices provide inadequate descriptions for the bases for exclusion. (Resp. at 14). Our court of appeals has explained in the context of the applicability of another FOIA exception that agency affidavits should be presumed reliable.

> As we stated in *Spannaus[v. U.S. Dep't of Justice*, 813 F.2d 1285, 1289 (1987) ], "[i]f the government fairly describes the content of the material withheld and adequately states its ground for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, a district court should uphold the government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency."

*Bowers v. U.S. Dep't of Justice*, 930 F.2d 350, 357 (4th Cir.1991). The court assumes the validity of the government's declarations and that they were prepared in good faith.

▮ Nevertheless, an agency's affidavits must be relatively detailed and non-conclusional in order to support a FOIA exemption. *See Simmons v. U.S. Dep't of Justice*, 796 F.2d 709 (4th Cir.1986); *see also National Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 680 (D.C.Cir. 1976). The government satisfies its burden "by describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exceptions." *Hanson*, 372 F.3d at 290. The *Vaughn* indices explain the four EOUSA exchanges and six OIP messages were part of the chain of communication in which employees of the agency brainstormed ways to respond to the Senate

committee and the newspaper story. (06–26–06 *Vaughn* index; 09–01–06 *Vaughn* index). This give-and-take of the deliberative process serves as an adequate basis upon which to deny disclosure.

Alternatively, plaintiff asserts that, at a minimum, the court should conduct an *in camera* review of the four EOUSA exchanges and six OIP messages listed in the *Vaughn* indices. (Resp. at 5). The Court established early on in FOIA jurisprudence that an *in camera* review is not automatic.

> As was said in *Kaiser Aluminum & Chemical Corp.*, 141 Ct.Cl., at 50, 157 F.Supp., at 947: "It seems ... obvious that the very purpose of the privilege, the encouragement of open expression of opinion as to governmental policy is somewhat impaired by a requirement to submit the evidence even *[in camera]*." Plainly, in some situations, *in camera* inspection will be necessary and appropriate. But it need not be automatic. An agency should be given the opportunity, by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency. The burden is, of course, on the agency resisting disclosure, 5 U.S.C. § 552(a)(3), and if it fails to meet its burden without *in camera* inspection, the District Court may order such inspection.

*Mink*, 410 U.S. at 93, 93 S.Ct. 827; *see also Ethyl Corp.*, 25 F.3d at 1249. In response to this statement in *Mink*, the idea of the Vaughn index was created. "If the [Vaughn] index is so vague as to leave the district court with an inability to rule, then some other means of review must be undertaken, such as *in camera* review." *Ethyl Corp.*, 25 F.3d at 1250. Yet, "an *in camera* review should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.'" *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C.Cir.1996) (citing *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C.Cir. 1978)).

Because the four EOUSA exchanges and six OIP messages reflect a deliberative approach prior to policy decisions, both prongs necessary to invoke the deliberative process privilege are satisfied and the privilege is applicable to all of them. *See Virginia Beach*, 995 F.2d at 1253. The *Vaughn* indices and accompanying declarations sufficiently described the basis for exclusion of the four EOUSA exchanges and six OIP messages and the agency's evaluative process. Pursuant to the requirement of § 552, the four EOUSA exchanges were reviewed by John E. Boseker, an attorney for the EOUSA, and the six OIP messages were reviewed by Melanie Ann Pustay, acting director of OIP, to determine whether portions could be segregated and disclosed, and some of the segregable material was released. (Boseker Decl. ¶¶ 28–29, attached as Ex. 1 to Mot. for S.J.; Putsay Decl. ¶ 13, attached as Ex. 2 to Mot. for S.J.). The four EOUSA exchanges and six OIP messages were properly withheld and *in camera* review of them is unnecessary.

### b. Draft Letters to Congressman Conyers

"Stated differently, the [deliberative process] privilege protects 'recommendations, *draft documents*, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Ethyl Corp.*, 25 F.3d at 1248 (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980)) (emphasis added); *Virginia Beach*, 995 F.2d at 1253.

In rejecting the disclosure of withheld draft documents, a district court explained that, "[d]raft documents, by their very nature, are typically predecisional and deliberative." *Kidd v. Dep't of Justice* 362 F.Supp.2d 291, 295 (D.D.C.2005) (citing *Exxon Corp. v. Dep't of Energy*, 585 F.Supp. 690, 698 (D.D.C.1983)). Our court of appeals has stated that drafts presented by a subordinate to a superior for revision are likely to receive deliberative process protection. *Virginia Beach*, 995 F.2d at 1253 (citing *Providence Journal Co. v. U.S. Dep't of the Army*, 981 F.2d 552, 559 (1st Cir.1992)). Other courts have consistently found that documents in draft form fall within the confines of the deliberative process privilege. *See e.g. Krikorian v. Dep't of State*, 984 F.2d 461 (D.C.Cir.1993) (draft letters proposing options for replies to public inquiries about an article on Armenian terrorism that was published in "The Department of State Bulletin" was predecisional and protected by exemption 5 since the letters reflected advisory opinions important to the deliberative process); *Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir. 1992) (unsigned draft letter with no factual information and reflecting only a preliminary agency position that was subsequently rejected was properly withheld pursuant to the deliberative process privilege in FOIA); *Sierra Club v. U.S. Dep't of Interior*, 384 F.Supp.2d 1, 18–19 (D.D.C.2004) (six Department of Interior draft letters to Senators and Representatives, containing suggested responses to inquiries regarding proposed petroleum exploration in the Arctic National Wildlife Refuge were properly exempted under exclusion 5, even if decision to undertake such exploration had already been made; draft letters constituted recommendations from staff as to how agency officials might handle congressional inquiries); *Van Aire Skyport Corp. v. FAA*, 733 F.Supp. 316, 322 (D.Colo.1990) (draft of a Federal Aviation Administration

letter to Denver and State of Colorado officials on the issues of the Denver airport was exempt under exemption 5); *Steyermark v. von Raab*, 682 F.Supp. 788, 790–791 (D.Del.1988) (draft of letter from the United States Customs Service to a Delaware legislator regarding an investigation was excluded pursuant to exemption 5); *U.S. v. J.B. Williams Co., Inc.*, 402 F.Supp. 796, 800 (S.D.N.Y.1975) (proposed drafts of a letter to the Attorney General of the United States certifying a penalty action brought by the Federal Trade Commission were immune from disclosure by virtue of exemption 5 because the drafts had not been "adopted" by the Federal Trade Commission as the basis of a decision).

"Nevertheless, an agency cannot avoid disclosing nondeliberative or predecisional material merely by placing it in draft form." *Van Aire Skyport Corp.*, 733 F.Supp. at 321 (citing *Dudman Communications Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1569 (D.C.Cir.1987)); *see also Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C.Cir.1982); *Sierra Club v. U.S. Dept. of Interior*, 384 F.Supp.2d 1, 18 (D.D.C.2004) ("The earlier version of the identical document would not be privileged merely because it was labeled 'draft.'"); *Burke Energy Corp. v. Dep't of Energy*, 583 F.Supp. 507, 513 (D.Kan.1984). A true draft that represented the tentative position of agency personnel and was subject to later revision would, however, be predecisional and exempt from disclosure. *Virginia Beach*, 995 F.2d at 1253; *Sierra Club*, 384 F.Supp.2d at 18; *Van Aire Skyport Corp.*, 733 F.Supp. at 321.

Without citing any authority for its position, plaintiff argues that a draft document essentially becomes a final document if a subsequent document is not adopted by the agency. Courts have previously rejected this argument. *See e.g. Sears, Roe-*

*buck & Co.*, 421 U.S. at 151, n. 8, 95 S.Ct. 1504. "The determination not to issue a policy evaluation might itself be a final decision. Furthermore, although many processes might not ripen into agency decisions, that does not preclude application of the deliberative process privilege." *Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 13 (D.D.C.1995), *aff'd on other grounds*, 76 F.3d 1232 (D.C.Cir.1996).

■ Although the burden is on the DOJ and all inferences must be construed in the light most favorable to Keeper of the Mountains, the DOJ has established in the *Vaughn* index and accompanying declaration with appropriate particularity that the withheld draft letters to Congressman Conyers are true drafts representing the tentative position of agency personnel subject to revision, or in this case, nondisclosure.

Alternatively, plaintiff argues that factual information should have been segregated from the draft letters and disclosed. (Resp. at 5).

■ The FOIA exceptions apply to categories of information rather than entire documents. *Ethyl Corp.*, 25 F.3d at 1245; *Virginia Beach*, 995 F.2d at 1253. The act specifically provides that "segregable portions of a record shall be provided ... after deletion of the portions which are exempt...." 5 U.S.C. § 552(b). Though the court did not need to address it in detail in the preceding sections, FOIA exemptions generally do not protect "purely factual material appearing in ... documents in a form that is severable without compromising the private remainder of the documents." *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C.Cir.1982) (citing *Mink*, 410 U.S. at 91, 93 S.Ct. 827); *see also Hopkins v. U.S. Dept. of Housing and Urban Development*, 929 F.2d 81, 85 (2d Cir.1991) (citing *Local 3, IBEW*, 845 F.2d at 1180). However, if the facts are " 'inextricably inter-twined with the policymaking processes' such that revelation of the factual material would simultaneously expose protected deliberation," then those facts are protected by the privilege. *Virginia Beach*, 995 F.2d at 1253 (citing *Mink*, 410 U.S. at 92, 93 S.Ct. 827); *see also Petroleum Information Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C.Cir.1992); *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C.Cir. 1980).

■ The sworn statement of John E. Boseker ("Boseker declaration"), who is the attorney advisor for the production of records and notification of documents withheld by the EOUSA, contains a blanket assertion in paragraph 29 that all documents withheld by the EOUSA have been evaluated to determine if any portion could be segregated and disclosed without compromising the integrity of the entire document. (Boseker Decl. ¶ 29, attached as Ex. 1 to Mot. for S.J.). On the other hand, with respect to the OIP documents, the sworn statement of Melanie Ann Pustay ("Pustay declaration"), who is the acting director of OIP, contains no such blanket reassurance that they have been reviewed for segregable material. (Pustay Decl., attached as Ex. 2 to Mot. for S.J.). Moreover, the Pustay declaration acknowledges that OIP reviewed the six e-mail messages listed in the OIP's *Vaughn* index for segregable material. (*Id.* ¶ 13). It did not do so for the draft letters. The Pustay declaration makes the following conclusional statement with respect to the drafts to Congressman Conyers:

> The process by which a draft evolves into a final document is itself a deliberative process. As a result, there is no reasonably segregable, non-exempt information that can be disclosed from the drafts.

(*Id.* ¶ 10). Citing paragraph 10 of the Pustay declaration, defendant contends in its

reply brief that "no reasonably segregable information in these draft letters exists ..." (Reply at 8). The unsworn assertion by counsel cannot overcome the DOJ's failure to conduct an inquiry into whether segregable information may be disclosed, particularly when counsel's assertion seems to be relying on the conclusional statement by Pustay that is troublesome. Similarly, the OIP's *Vaughn* index itself indicates no attempt by the agency to review whether the drafts contained material outside the exemption that could be segregated and disclosed. (09–01–06 *Vaughn* index, attached as Ex. 2–B to Mot. for S.J.).

This position by the agency is contrary to the portion of § 552(b) following all of the nine enumerated exceptions, which states "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). An agency must review all withheld material with the quoted direction in mind. *See id.*

It appears that the segregable material would probably be a small portion of the letters, if any exists at all. Nevertheless, there must be some assurance that the letters were reviewed and a determination was made that none of the material in the letters is segregable. No such assurance exists here.

Plaintiff has requested that the court conduct an *in camera* review of the draft documents. (Resp. at 4). As stated previously, *in camera* review is not automatic but may be necessary when the agency fails to meet its burden. *See Mink,* 410 U.S. at 93, 93 S.Ct. 827; *Ethyl Corp.,* 25 F.3d at 1249–50; *Quinon,* 86 F.3d at 1228.

The court affords the OIP an additional opportunity to review both draft letters to determine whether any of the information is segregable and, if so, disclosable. *See*

*Coastal States Gas Corp. v. Dep't of Energy,* 644 F.2d 969, 979–980 (3d Cir.1981) (citing *Dellums v. Powell,* 642 F.2d 1351, 1359 (D.C.Cir.1980)); *Campaign For Responsible Transplantation v. U.S. Food & Drug Admin.,* 219 F.Supp.2d 106, 116–117 (D.D.C.2002).

## IV.

Based on the foregoing, it is ORDERED that the issues raised in defendant's motion for summary judgment are resolved as follows:

1. The motion as to withholding the two-page tally of U.S. Attorneys' Offices be, and it hereby is, denied;

2. The motion as to the four EOUSA e-mail exchanges and six OIP e-mail messages described in the *Vaughn* indices be, and it hereby is, granted;

3. To the extent PAO 4 and OLA 17, 22, 23, 24, 25, and 26 and PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21 exist, remain undisclosed, and are not described in a *Vaughn* index, the motion as to these e-mails be, and it hereby is, denied;

4. The motion as to the two withheld draft letters by an Assistant Attorney General addressed to Congressman Conyers, designated as OLA 7 and 8, be, and it hereby is, denied inasmuch as there is no assurance that the letters have been reviewed to determine whether factual information could be segregated from the opinion material;

5. The parties be, and they hereby are, directed to confer with plaintiff with respect to PAO 4 and OLA 17, 22, 23, 24, 25, and 26 (which thus far have been undisclosed) and PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21 (which thus far have been redacted virtually entirely). To the extent there remains disagreement as to

the disclosure of these documents, the defendant, specifically OIP, be, and it hereby is, directed to file by October 1, 2007, a supplemental *Vaughn* index addressing them; and

6. The defendant, specifically OIP, be, and it hereby is, directed to review the draft letters from the Assistant Attorney General to Congressman Conyers, identified as OLA 7 and 8, to determine whether any portions of the letters are disclosable and shall file its determination by October 1, 2007.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.